# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JIMMIE MCCALL, on behalf of himself and all others similarly situated, | ) ) ) ) | CASE NO. 5:22-cv-816 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| SOFT-LITE L.L.C., | ) ) | |
| DEFENDANT. | ) ) | |

This matter is before the Court on the parties' briefs, requested by the Court, addressing the impact of *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). (*See* Doc. No. 25, Plaintiffs' Brief; Doc. No. 26, Defendant's Brief; Doc. No. 28, Defendant's Response to Plaintiffs' Brief; and Doc. No. 27, Plaintiffs' Response to Defendant's Brief.) The Court has considered the parties' respective positions in light of *Clark* and now issues this order regarding next steps in this case.

**Procedural Background**[1]

On May 18, 2022, plaintiff Jimmie McCall ("McCall" or "plaintiff") filed this action under the Fair Labor Standards Act against Soft-Lite, LLC ("Soft-Lite" or "defendant") on behalf of himself and others similarly situated.[2] At that same time, one additional person filed a consent to

---

[1] Any page number references to the record herein are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

[2] McCall also included a Rule 23 class action claim in his complaint.

join the litigation (*see* Doc. No. 2-1); two additional persons joined later, on October 24, 2022 and November 15, 2022 (*see* Doc. Nos. 13-1, 14-1).

The complaint alleges that Soft-Lite manufactures doors and windows. (Doc. No. 1, Complaint ¶ 13.) McCall was employed by Soft-Lite as a manufacturing employee, specifically, a machine operator, since July 2020; he was paid on an hourly basis. (*Id*. ¶¶ 14–15, 19.) McCall alleges in relevant part as follows:

> 22. Defendant only paid Plaintiff and other similarly-situated manufacturing employees for work performed between their scheduled start and stop times and did not pay them for the following work they performed before their scheduled start times and/or after their scheduled stop times: (a) changing into and out of personal protective equipment including, *inter alia*, safety glasses, gloves, masks, ear protection, and/or steel-toe boots; (b) getting work instructions and/or attending meetings to receive information necessary to perform their manufacturing work; (c) walking to their assigned work area; and/or (d) performing manufacturing work that was identical to the work they performed between their scheduled start and stop times.

> 23. Defendant required Plaintiff and other similarly-situated manufacturing employees to perform the following activities, which were integral and indispensable to their principal activities, and which Plaintiff and other similarly situated manufacturing, production, machine operation, line process, and/or assembler employees performed for Defendant's benefit: (a) changing into and out of personal protective equipment; (b) getting work instructions and/or attending meetings to receive information necessary to perform their manufacturing work; (c) walking to their assigned work area; and/or (d) performing manufacturing work that was identical to the work they performed between their scheduled start and stop time.

(*Id*. ¶¶ 22, 23.) As of the filing of the complaint, McCall wanted to send "opt-in" notices to the following persons:

> All former and current manufacturing employees of Soft-Lite L.L.C. between the last three years and the present.

(*Id*. ¶ 36.) McCall believes this constitutes "at least 500 persons." (*Id*. ¶ 37.)

2

On August 9, 2022, Soft-Lite filed its answer to the complaint, which included several affirmative defenses. (Doc. No. 7, Answer.)

The Court originally scheduled the Case Management Conference for October 5, 2022 (*see* Doc. No. 9) but, after reviewing the parties' planning report (*see* Doc. No. 11), the Court canceled the conference and set an expedited schedule for filing and briefing plaintiff's motion for conditional certification (*see* Doc. No. 12). On November 18, 2022, plaintiff timely filed his motion for conditional certification, expedited opt-in discovery, and court-supervised notice to potential plaintiffs. (Doc. No. 15.) Soft-Lite filed its opposition on December 16, 2022 (as supplemented with leave on January 6, 2023) (Doc. Nos. 16, 19), and McCall filed a reply on January 13, 2023 (Doc. No. 20).

In its brief in opposition to McCall's conditional certification motion, Soft-Lite argued that this Court should defer any decision pending a ruling from the Sixth Circuit in an appeal out of the Southern District of Ohio that held the potential for a complete rejection of the familiar two-step process used by most district courts when addressing the so-called "conditional certification" process in an FLSA case. (*See* Doc. No. 19, at 11 (citing *Clark v. A&L Home Care and Training Center*, 22-3101 (6th Cir., filed Feb. 4, 2022).) This Court agreed and, on January 18, 2023, issued an order deferring its ruling on conditional certification and staying all proceedings pending the Sixth Circuit's ruling. (Doc. No. 21, at 3.)

On March 21, 2023, McCall filed a motion for equitable tolling of the relevant statute of limitations. (Doc. No. 22.) Soft-Lite opposed that motion on April 4, 2023 (Doc. No. 23), and McCall filed a reply on April 11, 2023 (Doc. No. 24).

While this equitable tolling motion was pending, on May 19, 2023, the Sixth Circuit issued its ruling. *See Clark v. A&L Homecare & Training Ctr.*, 68 F.4th 1003 (6th Cir. 2023). The court

3

in *Clark* rejected the "certification" process followed by district courts and adopted a new, higher standard for obtaining "court-facilitated notice" to potential plaintiffs in FLSA cases.

In view of the holding in *Clark*, on May 20, 2023, this Court issued a non-document order terminating plaintiff's conditional certification motion, lifting the stay of the case, holding the equitable tolling motion in abeyance, and directing the parties to file simultaneous briefs (and subsequently, simultaneous responses) on the impact of *Clark*. The parties have done so and their briefs are currently before the Court.

McCall argues that *Clark* will impact this case in three ways: (1) there must be application of the new "strong likelihood" standard for Court-facilitated notice to potential plaintiffs; (2) expedited discovery must be permitted to determine who is "similarly situated" for purposes of court-facilitated notice; and (3) equitable tolling of the statute of limitations must be applied. (Doc. No. 25, at 1.)

Soft-Lite does not disagree regarding this threefold impact of *Clark*; but it does challenge McCall's application of each of the three matters. (Doc. No. 26, *passim*.) Notably, Soft-Lite seeks a prompt determination of the question of "similarly situated" and seeks to commence limited discovery in that regard as soon as practicable. (*Id*. at 1.)

The Court agrees that the parties have identified three aspects of litigation under the Fair Labor Standards Act that are affected by the decision in *Clark* and it will address each aspect below.[3]

---

[3] The Court notes, however, that the new legal standard announced by *Clark* has the most impact, as issues surrounding discovery and/or equitable tolling are not new and have always been within this Court's discretion.

4

## II.    The New Legal Standard Under *Clark*

"Under the Fair Labor Standards Act of 1938 (FLSA), plaintiffs may litigate federal minimum-wage and overtime claims on behalf of other 'similarly situated' employees." *Clark*, 68 F.4th at 1007 (citing 29 U.S.C. § 216(b)). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). In other words, other employees may become parties to FLSA litigation brought by the original plaintiff(s) "only if they affirmatively choose to do so[,]" *Clark*, 68 F.4th at 1007, *and* are "similarly situated." *Id.*

In *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989),[4] the Court held that "district courts have discretion, in appropriate cases, to implement [Section 216(b)] . . . by facilitating notice to potential plaintiffs." *Id.* at 169. Previously, courts in this circuit and elsewhere adopted a two-step process under which, at the first step (referred to as "conditional certification"), a district court could "facilitate notice of an FLSA suit to other employees upon a 'modest factual showing' that they are 'similarly situated' to the original plaintiffs." *Clark*, 68 F.4th at 1008 (citation omitted). The standard was uniformly characterized as "fairly lenient" and usually resulted in conditional certification for notice purposes. *Id.* (citation omitted).[5] After completion of merits discovery, if the case had not settled or otherwise been

---

[4] *Hoffman-LaRoche* was a case brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, which expressly incorporates 29 U.S.C. § 216(b).

[5] In this Court's experience, the parties often agreed to a particular "collective" of employees who should be notified. Only if they could not agree was a formal motion to "conditionally certify" filed, briefed, and resolved by the Court. But even when the parties agreed to notice (and no motion was filed), plaintiff often needed to engage in some limited discovery whereby defendant would supply the names and contact information of the employees (past and present) who fit the description of the agreed-upon "collective." Ordinarily, given that information, the parties would also agree on the language of the notice and a schedule for service and opting in, which they would submit to the Court for its approval.

resolved,[6] the district court would undertake the second step of taking "a closer look at whether those 'other employees' are, in fact, similarly situated to the original plaintiffs." *Id*. (citation omitted). If so, the court would grant "final certification" and the case would "proceed to decision as a collective action." *Id*. (citation omitted).

In *Clark*, the court of appeals "changed the approach courts in the Sixth Circuit must now take in managing . . . actions under the Fair Labor Standards Act (FLSA)." *Stewart v. First Student, Inc.*, No. 1:22-cv-2009, 2023 WL 4414165, at *1 (N.D. Ohio July 7, 2023).[7] After *Clark*, the Sixth Circuit no longer recognizes the concept of "conditional certification" of a "collective" whereby court-facilitated notice is given to potential plaintiffs "upon merely a 'modest showing' or under a 'lenient standard' of similarity." *Clark*, 68 F.4th at 1010. In *Clark*, the court reasoned that the decision to facilitate notice "is analogous to a court's decision whether to grant a preliminary injunction." *Id*. Although acknowledging that three of the four prongs of that standard "are inapposite[,]" the court stated:

> What the notice determination undisputedly shares in common with a preliminary-injunction decision . . . is the requirement that the movant demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision.

---

[6] The court in *Clark* noted, correctly based on this Court's experience, that "the decision to send notice of an FLSA suit to other employees is often a dispositive one, in the sense of forcing a defendant to settle—because the issuance of notice can easily expand the plaintiffs' ranks a hundredfold." *Clark*, 68 F.4th at 1007.

[7] The Sixth Circuit pointed out that, after *Hoffman-LaRoche*, "most district courts [including this one] have adopted a two-step approach first described in a 1987 decision from the district court in New Jersey." *Clark*, 68 F.4th at 1008 (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987)). The Sixth Circuit, however, had never formally addressed the merits of the *Lusardi* approach. An interlocutory appeal was accepted in *Clark* because the Fifth Circuit had recently rejected the *Lusardi* holding (as the Sixth Circuit saw it) that "the district court must make a 'final' determination of substantial similarity before facilitating notice of the suit to other employees." *Clark*, 68 F.4th at 1008–09 (citing *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021)). The court in *Clark* "adopt[ed] neither of those approaches." *Id*. at 1009.

*Id.* at 1011. The court "adopt[ed] that part of the preliminary-injunction standard[,]" holding that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* (citation omitted). "That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*

Another district court in this circuit very recently issued a decision addressing the new FLSA standard, but in the context of a motion to "decertify" a "collective" that had been "certified" under the former FLSA standard. *See McElwee v. Bryan Cowdery, Inc.*, No. 2:21-cv-1265, 2023 WL 4423880 (S.D. Ohio July 10, 2023). Although *McElwee* was in a different procedural posture than the instant case (having already granted "conditional certification"), it still provides guidance to this Court's deliberations with respect to the new standard announced by *Clark*. The court in *McElwee* noted that "[a]lthough [after *Clark*] there is no 'certification,' the Sixth Circuit retained a two-step process for issuing notice and allowing FLSA claims to proceed as a collective action." *Id.* at *12.

As an initial matter, this Court clarifies that *McElwee*'s reference to "proceed[ing] as a collective" is incorrect after *Clark*. The Sixth Circuit distinguished FLSA actions from class actions, noting that actions under Rule 23 are "representative," unlike in FLSA actions, where persons who opt in (and are "conclusively" determined by the district court to be "similarly situated" to the original plaintiff(s)) "become parties" to the lawsuit ("as opposed to mere recipients of notice") with "'the same status in relation to the claims of the lawsuit as . . . the named plaintiffs.'" *Clark*, 68 F.4th at 1009 (quoting *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 402–03 (6th Cir. 2021)). In a Rule 23 action, "the district court certifies the action itself as a class action; whereas in an FLSA action . . . the district court simply adds parties to the suit." *Id.* Because "the

term 'certification' has no place in FLSA actions[,]" *Clark* characterizes as "mistaken" any

assertion that an FLSA action "'proceeds' as a 'collective' or even a 'representative' action." *Id.*

(citing *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1042 (S.D. Ohio 2018); *Mickles v.

Country Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018)).

That said, *McElwee* otherwise correctly describes the post-*Clark* two-step process as

follows:

> At step one, the [c]ourt makes an initial determination on whether the named plaintiffs are similarly situated to other, potential opt-in plaintiffs. [*Clark*, 68 F.4th] at 1009. This determination is provisional; it permits the sending of court-supervised notice to potential opt-ins but it "has zero effect on the character of the underlying suit." *Id.* (citing *Genesis Healthcare [Corp. v. Symczyk]*, 569 U.S. [66,] 75, 133 S. Ct. 1523[, 185 L. Ed. 2d 636 (2013)]). At this stage, named plaintiffs must show a "strong likelihood" that they are similarly situated to the potential opt-ins. *Id.* at 1011. The strong-likelihood standard is borrowed from the test applied when implementing preliminary injunctions and "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*
>
> Step two occurs after the close of discovery and requires that the [c]ourt make a conclusive determination on whether the named plaintiffs are "in fact similarly situated" to opt-in plaintiffs. *See id.* at 1009–10. It is only after the [c]ourt conclusively determines the named plaintiffs are similarly situated to any opt-ins, that the opt-ins become parties to the suit and are permitted to proceed to trial collectively. *Id.* at 1009 (citing 29 U.S.C. § 216(b) and *Canaday [v. Anthem Companies, Inc.]*, 9 F.4th [392,] 403 [(6th Cir. 2021)]). To succeed at step two and proceed to trial or judgment as a collective, named plaintiffs must show that they are similarly situated to the opt-ins by a preponderance of the evidence. *See, e.g., id.* at 1010.

*McElwee*, 2023 WL 4423880, at *12.

The holding in *Clark*, adopting a portion of the preliminary injunction standard, is plainly

stated:

> [W]e hold that, for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a "strong likelihood" that those employees are similarly situated to the plaintiffs themselves.

8

*Clark*, 68 F.4th at 1011 (citation omitted). Yet, in his post-*Clark* brief, plaintiff argues (quoting from an earlier portion of the opinion where the circuit was delineating the possible range of "potential plaintiffs") that "court-authorized notice [may be sent] to individuals who '*might* be similarly situated to the original plaintiffs[.]'" (Doc. No. 25, at 5 (quoting *Clark*, 68 F.4th at 1010).) Plaintiff accurately quotes the discussion leading up to the holding in *Clark*, but then seems to ignore the court's actual holding. This Court will not do the same.

The holding of *Clark* is that, for there to be Court-facilitated notice to potential plaintiffs, McCall must move for such notice and, in his motion, must show a "strong likelihood" that other employees of Soft-Lite *are* "similarly situated" to him.

### III.    An Aside

Before moving on to the issue of expedited discovery, the Court feels the need to comment on a certain "blurriness" in the reasoning of *Clark* with respect to the practical application of its new standard. The *Clark* court itself identified the issue before it narrowly: "At issue here is the *showing of similarity* that is necessary for a district court *to facilitate notice of an FLSA suit* to employees who were not originally parties to the suit." *Clark*, 68 F.4th at 1007 (emphases added). There is a difference between determining before merits discovery and solely for purposes of notice, that plaintiff has shown a strong likelihood that others are similarly situated to him, from determining after merits discovery (but before a final decision on the merits) who among the opt-ins should remain a plaintiff because that person actually *is* similarly situated to the plaintiff.

The difference is subtle but important depending on the particular procedural posture one is in at any given time in the case. The critical determination at the first stage is simply whether there is a *sufficient* showing of similarity to permit notice to others (and sufficiency is defined as a "strong likelihood"). As the court in *Clark* noted, "[t]he strong likelihood standard is familiar to

the district courts[.]" It may turn out, at the second stage, that the original factual finding (which *Clark* expressly identifies as "provisional") was not correct (as sometimes happens with respect to facts in a preliminary injunction context) and that an employee who opted in following notice actually turns out to be *dis*similar to plaintiff for some reason that was not readily apparent before completion of merits discovery.

One example of this "blurriness" in the *Clark* majority (at least from a district court's perspective) is its discussion of the relevance of an arbitration defense to the *notice* determination. The majority rejected the plaintiff's assertion that "an arbitration defense is off-limits for purposes of the notice determination because that defense presents 'merits questions.'" *Id*. at 1012. The court reasoned:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-LaRoche*, 493 U.S. at 170, 110 S. Ct. 482. Thus, on remand, the district court should consider the parties' evidence as to arbitration agreements along with all the other evidence in determining whether the plaintiffs have met the strong likelihood standard.

*Id*. This passage blurs the initial (that is, preliminary) "strong likelihood" determination for notice purposes with the factual "similarly situated" merits determination made later in the case (at a time when the defendant is free to move to dismiss any opt-in plaintiff who turns out to be dissimilar).

As a result of this blurring, it appears that the Sixth Circuit may be endorsing the inclusion of all affirmative defenses within the contours of permissible expedited discovery to determine whether employees are "similarly situated" for purposes of notice. It seems to this Court that, rather than leading to "efficient resolution," this broad reading of *Clark* has the potential to create

10

satellite litigation early on in the proceedings and threatens to further delay resolution in a time-sensitive matter.

Therefore, this Court construes the *Clark* decision somewhat more narrowly than its language seems to suggest, concluding that the court in *Clark* merely makes the legitimate observation that a district court can (and should) consider *all* the available evidence (from both sides) when making its initial determination for purposes of notice. The Court does not read *Clark* as broadly endorsing expedited discovery with respect to all affirmative defenses at the notice stage, but rather only permitting discovery, if necessary, related to specific defenses that may be directly relevant to the "similarly situated" inquiry. That said, as always, a district court has discretion to determine the appropriate contours of discovery (expedited or otherwise) in any given case. With that in mind, the Court now turns to the question of expedited discovery for notice purposes.

## IV.    Expedited Discovery

Both sides argue that there is a need for a short period of expedited discovery (roughly 90 days) related to the element of "similarly situated" so as to determine whether Court-facilitated notice to potential plaintiffs would be appropriate.

McCall proposes that each side be allowed to serve 15 requests for production and 10 interrogatories related to identifying who is similarly situated to McCall. (Doc. No. 25 at 5–6.) McCall also seeks an order requiring Soft-Lite to produce the following documents:

> (a) a list of all Class Members, including their names, phone numbers, addresses, employment dates, pay rates, and job titles ("Class List");
>
> (b) time and pay records for all Class Members;
>
> (c) job descriptions for each job title included in the Class List;

(d) employment agreements;

(e) all relevant policies and procedures regarding timekeeping;

(f) all relevant policies and procedures regarding compensation.

(*Id*. at 5.) After this production, McCall would want to conduct a Rule 30(b)(6) deposition. (*Id*.)

Soft-Lite opposes this broad production, arguing that the court in *Clark* cautioned that the district court's facilitation of notice "must not 'in form or function' resemble 'the solicitation of claims.'" (Doc. No. 26, at 4 (quoting *Clark*, 68 F.4th at 1010) (further citation omitted).) As a result, in Soft-Lite's view, McCall is not entitled to "a contact list of other employees prior to this Court's determination that there is a strong likelihood that they are similarly situated to the plaintiffs." (*Id*. at 5.)

Soft-Lite argues that discovery should begin with the current four named plaintiffs, whose "job roles provide a suitable cross-section of 'manufacturing employees,' ranging from Wrappers to Balancers and Saw Operators." (*Id*. at 7.) McCall opposes early depositions of the four plaintiffs, asserting that they likely have only "minimal" knowledge regarding which other employees may be "similarly situated" to them. (Doc. No. 27, at 6.) He claims depositions at this juncture would "create undue hardship." (*Id*.) McCall does not oppose serving appropriately narrow written discovery on the four plaintiffs.

Soft-Lite notes generally that "production workers operate on one of five separate lines . . . [that] are true assembly lines . . . [with] nine stations total, beginning with Saw Operator and ending with Wrapper." (Doc. No. 26, at 7.) According to Soft-Lite, plaintiff can use ordinary merits discovery (as opposed to expedited discovery) to elaborate on these details. (*Id*.) In fact, Soft-Lite asserts that "this litigation should proceed through discovery like any other collective action prior to the *Clark* decision." (*Id*. at 8.)

12

The question of whether to permit discovery and, if so, when and under what limitations is not particularly clear from the majority opinion in *Clark*, which mentions discovery only rather broadly, as follows:

> If the plaintiffs in an FLSA suit move for court-approved notice to other employees, the court should waste no time in adjudicating the motion. To that end, a district court may promptly initiate discovery relevant to the motion, including if necessary by "court order." Fed. R. Civ. P. 26(d)(1).

*Clark*, 68 F.4th at 1011. This merely states the obvious—that district courts may (or may not) permit early (perhaps expedited; perhaps limited) discovery. This Court does not read *Clark* as *requiring* that early discovery (expedited or otherwise) be permitted in all cases where court-facilitated notice is (or will be) sought. Nor would it, since "[d]istrict courts have broad discretion under the rules of civil procedure to manage the discovery process and control their dockets." *Marie v. Am. Red. Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992)).

That said, as noted by another judge of this district facing a similar FLSA discovery request, "[t]his issue comes to the Court in an unusual posture. While [p]laintiff requests an order compelling [defendant] to produce . . . documents, . . . [p]laintiff has served [no] discovery on [defendant] or otherwise formally requested those materials, and neither party has filed a motion to compel or a motion for protective order. Instead, [p]laintiff is effectively asking the Court to craft discovery requests directed to [defendant] on its own initiative." *Jones v. Ferro Corp.*, No. 1:22-cv-253, 2023 WL 4456815, at *5 (N.D. Ohio July 11, 2023).[8] The same is true here—no discovery has yet been served (though not surprisingly, given that the matter has been stayed).

---

[8] The Court notes that the parties in *Jones* consented to the exercise of jurisdiction by the assigned magistrate judge.

Even so, this Court agrees with *Jones* that *Clark* does not "requir[e] a district court to order a defendant to produce particular documents absent a formal request." *Id*.

Therefore, as in *Jones*, this Court concludes that "the appropriate procedure is for the parties to conduct a period of expedited discovery . . . during which either party may seek documents and information that the party reasonably believes is relevant to the 'similarly situated' inquiry." *Id*. A schedule for doing so shall be set according to the procedure outlined in the conclusion of this order.

Although the Court will not fashion any discovery requests on behalf of the parties, it will provide some guidance herein regarding the permissible scope of expedited discovery for notice purposes in light of *Clark*.

First, since the court in *Clark* has adopted a portion of the preliminary injunction standard in the FLSA context, it is reasonable to look to such cases for guidance as to the appropriate scope of discovery at this juncture. "When a party seeks expedited discovery and has a pending request for a preliminary injunction, courts consider whether the requested expedited discovery is narrowly tailored to address the issues raised in the preliminary injunction." *Castillo v. Whitmer*, No. 1:20-cv-751, 2020 WL 11036303, at *2 (W.D. Mich. Aug. 21, 2020) (citing *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587 (D. Del. 2004)); *see also 5ifth Element Creative, LLC v. Kirsch*, No. 5:10-cv-255, 2010 WL 4102907, at *2 (E.D. Ky. Oct. 18, 2010) ("The party seeking the expedited discovery bears the burden of showing good cause for this departure from the usual discovery process[] [and since] expedited discovery is not the norm . . . such requests must be narrowly tailored to obtain information relevant to the determination of the preliminary injunction." (citation omitted)).

14

Here, the discovery currently proposed by McCall is excessive. It is not "narrowly tailored" to the sole question of whether there is a "strong likelihood" of "substantial similarity" to the plaintiff (based on the allegations of the complaint) and it would needlessly *further* extend these proceedings that have already been stayed for a significant period of time.

On the other hand, contrary to Soft-Lite's argument that McCall is not entitled to names and contact information of any other employees (*see* Doc. No. 26 at 4–6), "[g]iven the heightened standard that the Sixth Circuit has now imposed on FLSA plaintiffs, . . . it would be unreasonable to expect [p]laintiff to satisfy that burden while at the same time denying [p]laintiff information about potential opt-in plaintiffs that could assist [p]laintiff in satisfying his burden." *Jones*, 2023 WL 4456815, at *6. But McCall is entitled to information regarding other employees of Soft-Lite "only to the extent that such information reasonably relates to the question of whether such employees are similarly situated to [p]laintiff." *Id.*

As explained by another court in this circuit, "[n]amed plaintiffs are similarly situated to opt-ins 'when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *McElwee*, 2023 WL 4423880, at *12 (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016)). "That is, plaintiffs are similarly situated if their claims are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Id.* (quoting *O'Brien*). "Similarly situated opt-ins 'are those whose causes of action accrued in approximately the same manner as those of the named plaintiff.'" *Id.* (quoting *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011)).

In *Clark*, the court noted that "[w]hether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies . . . as the original plaintiffs were." *Clark*, 68 F.4th at 1010. The tasks and policies about which McCall specifically complains, that is, his "common theories of [Soft-Lite's] statutory violations[,]" *McElwee*, 2023 WL 4423880, at *12, are quite specifically delineated in paragraphs 22 and 23 of his complaint.

The Court also agrees with the court in *Jones* that *Clark* "expressly held that courts may consider individualized defenses . . . at the notice stage." *Jones*, 2023 WL 4456815, at *6 (citing *Clark*, 68 F.4th at 1012). McCall does not seem to disagree that, as a result, Soft-Lite may also be entitled to expedited discovery that is "limited to information bearing on the 'similarly situated' inquiry." *Id.*

To further assist the parties in formulating discovery requests that are "narrowly tailored" to the "similarly situated" question, the Court observes that such requests should focus on the violations alleged in the complaint (and any closely related affirmative defenses in the answer). For example, although plaintiff's current request for names and contact information is too broad, plaintiff should, at the very least be entitled to learn the identity (by name and contact information, and within the requisite statute of limitations) of other employees who are (or were) required by their jobs to perform the same categories of activities delineated in paragraphs 22 and 23 of the complaint as being violations of the FLSA. Soft-Lite is in the best position to know what activities are required of each employee.

It may very well be that the parties will be able to reach an agreement as to the group of employees, if any, who should receive notice under the new standard in *Clark* and based on the allegations of the complaint relating to specific FLSA violations, as well as the defenses raised by

16

defendant. Even under the former more lenient standard, parties often jointly agreed on who should receive notice and in what form. The Court sees no reason to circumvent that possibility and holds out hope that the guidance offered by this opinion will assist the parties in their joint efforts.[9]

## V.  Equitable Tolling

McCall previously filed a motion for equitable tolling that was fully briefed by April 11, 2023. (*See* Doc. No. 22, Plaintiff's Motion; Doc. No. 23, Defendant's Opposition; Doc. No. 24, Plaintiff's Reply.) On May 20, 2023, in light of the ruling in *Clark*, the Court asked for supplemental briefing, which the parties supplied. These briefs include additional arguments relating to equitable tolling. Therefore, in determining this issue, the Court has considered the original briefing as well as the supplemental briefing.

A claim under the FLSA must be "commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years[.]" 29 U.S.C. § 255(a). An action is "commenced" by a named plaintiff on the date the complaint is filed, subject to certain exceptions. 29 U.S.C. § 256. But, for a potential opt-in plaintiff, an action commences when he or she files a written consent to join the action.[10] 29 U.S.C. § 256(b). "As a result, the statute of limitations continues to run after the named plaintiff files suit, and the pool of timely claims continues to shrink until either all putative class members' claims have become time-barred or they have consented to join the suit within the limitations

---

[9] The Court also notes that the parties' briefs reflect some areas of agreement, which the Court encourages them to pursue when making the plan that will be required by this order.

[10] In this case, there are currently three people, in addition to the named plaintiff, who have filed consents to join the lawsuit. (*See* Doc. No. 2-1 (Consent of Katrina Deal-McCall [filed 5/18/22]); Doc. No. 13-1 (Consent of Tonya N. McDonald [filed 10/24/22]); and Doc. No. 14-1 (Consent of Brandon Boyd [filed 11/15/22]); *see also* Doc. No. 15-4 (Opt-in Declarations).)

period." *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-cv-674, 2018 WL 11225871, at *6 (E.D. Tenn. Mar. 2, 2018) (citation omitted).

The possible need for equitable tolling was raised by two of the three judges in *Clark*, although not by the majority opinion. In his concurrence, Judge Bush noted that "[t]he heightened standard we announce, with its concomitant discovery and requirement to litigate defenses, may significantly lengthen the period before potential plaintiffs are notified of a pending FLSA lawsuit." *Clark*, 68 F.4th at 1012 (Bush, J., concurring).[11] As a result, "[i]mplementation of the newly announced standard without consideration of tolling is likely to deplete remedies Congress has duly provided." *Id*. at 1013. Judge Bush concluded that "[e]quitable considerations support the use of tolling for FLSA collective actions." *Id*. at 1014. In her concurrence in part, Judge White "agree[d] with Judge Bush that, given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs." *Id*. at 1017 (White, J., concurring in part).

Plaintiff's original position, which is unchanged in his supplemental brief, is that the Court should toll the statute of limitations for all potential plaintiffs for the period beginning January 18, 2023 (the date this Court deferred a ruling on conditional certification pending a ruling in *Clark*) until the date that Court-approved notice issues.[12] (*See* Doc. No. 22, at 1, 11; Doc. No. 25, at 11–12.) Soft-Lite generally argues that any determination regarding tolling would be premature and should await this Court's determination as to whether court-facilitated notice will be permitted.

---

[11] This mention of "[a] requirement to litigate defenses . . . before potential plaintiffs are notified" is another example of the blurriness previously noted by this Court. Every lawsuit presents the "requirement to litigate defenses." But specifically linking that requirement to the new "heightened standard" for notice and its potential for additional delay seems to suggest that the court in *Clark* is endorsing expedited discovery with respect to all defenses. This Court, as already discussed, views the issue slightly more narrowly. Of course, each case must be evaluated based upon its own unique circumstances.

[12] Or, presumably, the date that such court-approved notice is denied.

(*See* Doc. No. 23, at 3–7; Doc. No. 28, at 12.) Soft-Lite, however, is willing to agree to tolling during the 90-day expedited discovery period that both parties are now proposing. (Doc. No. 28, at 12.)

This Court is persuaded by the reasoning in *Jones v. Ferro Corp.*, *supra*, which noted that "[c]ourts are divided on whether it is appropriate for a court to equitably toll the statute of limitations for potential opt-in plaintiffs in an FLSA case before those employees actually opt in." *Jones*, 2023 WL 4456815, at *7 (collecting cases reflecting the opposite holdings). The court in *Jones* ultimately agreed that a ruling on equitable tolling with respect to all potential opt-in plaintiffs would be premature because it is a determination that "must be considered on a case-by-case basis." *Id*. Further, the court in *Jones* "question[ed] whether [p]laintiff has standing to seek equitable tolling on behalf of absent class members." *Id*. The court noted that, "while two members of the *Clark* panel stated that equitable tolling should be available in FLSA actions, neither indicated that a court should address the issue prior to the notice determination." *Id*. As a result, the court in *Jones* denied plaintiff's request for equitable tolling without prejudice, stating that "[i]f notice is ultimately provided to potential opt-in plaintiffs, any opt-in plaintiffs whose claims may otherwise be time-barred may move for equitable tolling at that time." *Id*.

This Court agrees that a determination on equitable tolling for persons not yet parties to the lawsuit is premature. None of the cases that discuss the *principles* underlying equitable tolling discuss the *timing* of that determination. This Court is persuaded that well-recognized principles of jurisdiction and standing are always applicable. Therefore, until this Court has jurisdiction over a particular party who has opted in, any ruling on equitable tolling with respect to such party's claims would be a prohibited advisory ruling. Further, the four plaintiffs who are currently parties to this case (and whose statute of limitations has, in fact, been tolled by their joining the case) have

19

no standing to raise the issue on behalf of *potential* plaintiffs because, as pointed out by the court in *Clark*, this FLSA action "is not representative[.]" *Clark*, 68 F.4th at 1009.

That said, in recognition of the delay that will result from expedited discovery, which will be permitted here on the question of "similarly situated," the Court advises the parties that, following such discovery, the Court will entertain a motion for 90 days of equitable tolling, provided such motion is filed no later than 14 days after the expiration of the opt-in deadline. Whether that 90 days will be applicable for particular plaintiff(s), will be decided at that time.

To the extent set forth herein, the motion for equitable tolling (Doc. No. 22) is denied without prejudice to reasserting the issue at such time as it may become appropriate.

**VI.     Conclusion**

In light of the above, the Court will conduct a telephonic Case Management Conference with counsel on August 24, 2023 at 3:30 p.m. to discuss a case management schedule. Directions for dialing in to the conference will be sent by email no later than one day before the conference.

The parties shall confer and shall file a Report of Parties' Planning Meeting (in the form attached to this order) by August 21, 203, including proposed dates and deadlines for the relevant case management events, plus any additional matters for the Court's attention.

The Court urges the parties to agree on the question of whether Court-facilitated notice to potential plaintiffs is warranted and, if so, to supply relevant deadlines (as indicated in the form Report). During the Case Management Conference, depending on whether there is agreement as to notice, the Court may also set case management dates and deadlines for general fact discovery (including discovery of any electronically-stored information); expert discovery (if any) (including deadlines for parties to file burden-of-proof and rebuttal reports and to complete all expert discovery); briefing, for good cause shown, on any preliminary, potentially case-narrowing

20

motions other than ordinary summary judgment motions; briefing on summary judgment motions (including motions to dismiss any opt-in plaintiff(s)); and all court appearances (including status conference(s), the final pretrial conference, and the date for a jury trial), all to be fully completed and the case closed by September 30, 2025.

As always, the Court encourages the parties to consider resolving this case through settlement and, in such event, the parties should promptly notify the Court.

**IT IS SO ORDERED**.

Dated: August 1, 2023

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**